**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAUNTEL MORGAN<br>4105 West Girard Ave.<br>Philadelphia, PA 19104 : | CIVIL ACTION |
| : | NO.: _____ |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| THRIVE THERAPY, LLC : | |
| 1061 Bridge Street : | |
| Philadelphia, PA 19124 : | **JURY TRIAL DEMANDED** |
| and : | |
| SHANA BHATIA : | |
| 1061 Bridge Street : | |
| Philadelphia, PA 19124 : | |
| and : | |
| MOSES STRAUSS : | |
| 1061 Bridge Street : | |
| Philadelphia, PA 19124 : | |
| : | |
| Defendants. : | |
| : | |

**CIVIL ACTION COMPLAINT**

Shauntel Morgan (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      Plaintiff has initiated this action to redress violations by Thrive Therapy, LLC, Shana Bhatia, and Moses Strauss (hereinafter collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Pennsylvania Human Relations Act

("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA and the PFPO once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**PARTIES**

6.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7.      Plaintiff is an adult who resides at the above-captioned address.

8.      Thrive Therapy, LLC (hereinafter individually referred to as "Defendant Thrive"), a Pennsylvania-based behavioral health corporation, delivers therapeutic services primarily to children and adolescents, and is located at the above-captioned address.

9.      Upon information and belief, Shana Bhatia (hereinafter "Defendant Bhatia"), Intake Coordinator for Defendant Thrive, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Thrive, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

10.     Upon information and belief, Moses Strauss (hereinafter "Defendant Strauss"), CEO/Owner of Defendant Thrive, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Thrive, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

11.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13.     Plaintiff is a Black (African American) female.

14.     Plaintiff was employed by Defendants off and on for approximately 3.5 years, beginning in or about March of 2022, predominantly in a patient care role.

3

15.    Specifically, Plaintiff's most recent term of employment with Defendants began in or about December of 2023, until her unlawful termination (discussed further *infra*) on or about November 21, 2025.

16.    Plaintiff was rehired in or about December of 2023, as a Personal Care Assistant ("PCA"), until in or about May of 2025.

17.    In or about the spring of 2025, Defendant Thrive's Staffing Coordinator resigned.

18.    Shortly thereafter, Complainant contacted Defendant Strauss (Caucasian) to express interest in more advancement opportunities.

19.    On or about May 13, 2025, the more sedentary (in office) position of Staffing Coordinator was extended to Complainant solely by Defendant Strauss.

20.    Once placed in the role of Staffing Coordinator, Plaintiff was to directly report (and be supervised by) Defendant Bhatia (Asian Indian).

21.    Throughout Plaintiff's tenure with Defendants, prior to working under Defendant Bhatia, Plaintiff had performed in an exemplary and model manner and without issue.

### -Race Discrimination-

22.    Once Plaintiff fell under the supervision of Defendant Bhatia, she observed and/or was subjected to race discrimination, harassment, and disparate treatment by Defendant Bhatia, including known racial stereotypes, such as being blanketly perceived as an "angry black woman."

23.    While Plaintiff did not work side-by-side or near Defendant Bhatia (physically), once in the role, their communications were typically via video conference calls (such as by Zoom) or via phone calls.

24.    Despite Plaintiff's natural, trained, diplomatic and calm demeanor (fine-tuned by virtue of working with patients in health care for several years), Defendant Bhatia would

continually engage in microaggressions and stereotype Plaintiff during (what was supposed to be) their normal dialogue(s), which Plaintiff found to be extremely upsetting and offensive.

25. In fact, for no legitimate reasons, during many of their normal talks or updates, Defendant Bhatia would say things, including but not limited to, "don't be so aggressive," "let's lower the tone" or "tone it down," you are coming off as "intimidating," "you make my heart pound when I talk to you," and a host of other racial stereotypes about Plaintiff's style of communication.

26. Defendant Moses additionally came to the office on one occasion, accompanied by Clinical Manager, Mark Levinton (Caucasian, hereinafter "Levinton") just to have a meeting with Plaintiff and further advise her that she was "rough around the ages" and needed to "watch her tone."

27. Most offensively, Defendant Moses stated to Plaintiff that "A wise woman once told me, you can take the woman out of the street, but you can't take the street out of the woman" – another stereotypical racial reference, this time insinuating that Plaintiff came from a poor rough urban background, which could not have been further from the truth as Plaintiff had a very suburban, educated background.

28. In addition to stereotyping Plaintiff as an aggressive and threatening African American female (despite her professionalism and calmness), Defendant Bhatia also talked down to Plaintiff as if she was unable to understand basics or business terminology and insinuated that Plaintiff lacked the ability to comprehend other discussion(s) – again stereotyping Plaintiff as being African American and uneducated.

29. Essentially, unlike Plaintiff's non-African American co-workers, Defendant Bhatia spoke down to Plaintiff as if she was incompetent or dumb (and how one would communicate with a young child).

30.    Because Defendant Bhatia did not treat non-African American employees in such a demeaning and hostile way, Plaintiff also attributed this to Defendant Bhatia's biased perceptions(s) of African Americans, as there was no other reasonable or objective explanation(s). By way of example, but not intended to be an exhaustive list; while working, Bhatia:

    a.    Repeatedly questioned Plaintiff about rudimentary and already completed tasks asking if she struggled with them, if she completed them, and other similar questions;

    b.    Excluded Plaintiff from communications or notifications others were privy to of which Plaintiff should have known or been updated about to do her job duties;

    c.    Micromanaged and nitpicked things Plaintiff did; and

    d.    Treated Plaintiff disparately in multiple other ways (*i.e.*, Plaintiff worked in an office space (and floor) where there were at any given time three (3) employees, but Defendant Bhatia would not even provide Plaintiff with access (code) information to enter the space.  Rather, Plaintiff had to wait for one of the other few non-African American employees to show up (who often showed up late) to let Plaintiff in to start working.  Not only was Plaintiff the only person without the access code, but when other employees were very late, Plaintiff would ask the building owner or manager to let her in the office so she could commence working).

31.    In sum, Defendant Bhatia's treatment toward Plaintiff was atrocious, continually upsetting, and indisputably different based upon race.

32.    As a result of the aforementioned discriminatory and hostile work environment, Plaintiff made several complaints to Human Resource ("HR") and her management (including Defendant Bhatia) that she believed Defendant Bhatia was "treating [her] different based upon

[her] race," was "racially discriminatory," and other iterations of these concerns, but her concerns went largely unaddressed.

<strong><u>-Disability Discrimination-</u></strong>

33.     In addition to the discrimination, hostile work environment and disparate treatment that she was subjected to as a result of her race, Defendants also subjected Plaintiff to discrimination, disparate treatment, and retaliation as a result of her disabilities.

34.     Plaintiff has and continues to suffer from ADA-qualifying heath conditions such as Post Traumatic Stress Disorder ("PTSD") and associated conditions/complications.

35.     As a result of her aforesaid health conditions, Plaintiff suffers from sleeplessness, panic attacks, nightmares, nausea, and hyperventilation; which (at times) limits her ability to perform some daily life activities, such as sleeping, concentrating, eating, and working (among other daily life activities).

36.     Despite Plaintiff's aforementioned health conditions and limitations, Plaintiff was able to perform her job duties well; however, she (at times) required some reasonable medical accommodations.

37.     Plaintiff had also explained to Defendants' management that she suffered from PTSD and associated health problems that were being exacerbated by the discrimination, hostility, and animosity that Defendant Bhatia was subjecting her to, and requested to simply have Defendant Bhatia be more professional and not make derogatory comments (as well as speaking in a non-yelling tone).

38.     Not only was Plaintiff's request to have Defendant Bhatia simply stop yelling at her and making derogatory comments a very reasonable medical accommodation request on her part, but it was also common civility and adherence to Defendants' policies.

7

39.    Nonetheless, despite requesting such an easily grantable accommodation, nothing changed with Defendant Bhatia's behavior towards Plaintiff (and hence, she was not accommodated in any manner).

40.    Instead, Defendant Bhatia continued to yell at and berate Plaintiff, which continued to negatively affect her aforesaid mental health conditions, which worsen with stress.

41.    Plaintiff further believes her disclosures of health problems may have also factored into the discrimination or retaliation she received by Defendant Bhatia as set forth in more detail *infra*.

**-Increased Hostile Work Environment and Retaliation (including Termination)-**

42.    By September of 2025, due to Plaintiff's ongoing complaints of discrimination to HR and management, Plaintiff was experiencing significant retaliation from Defendant Bhatia.

43.    Specifically, Defendant Bhatia had started creating a paper trail to discipline Plaintiff for just about any manufactured reason she could provide.

44.    For example, in addition to getting numerous types of discipline, including but not limited to multiples write-ups and unjustified micromanagement/monitoring, starting in September of 2025, and through Plaintiff's ultimate termination from employment, Defendant Bhatia was outright hostilely yelling at Plaintiff in nearly all communications with her.

45.    At one point, Defendant Bhatia screamed at Plaintiff on the phone to the point where Plaintiff began to feel panic and a flareup of her health conditions, and she had to say, "I am hanging up now" – or risk worsening her aforesaid health conditions.  Nonetheless, Plaintiff expressed a willingness to talk when Defendant Bhatia could talk to Plaintiff in a professional and courteous manner as Defendant Bhatia did with Plaintiff's non-African American co-workers.

8

46.    Defendant Bhatia then admonished Plaintiff for being unprofessional in having to hang up when she was causing Plaintiff increased anxiety, panic and a PTSD flareup due to her discriminatory and retaliatory abusiveness.

47.    The fact that Plaintiff had verbally complained of discrimination several times between June through August of 2025 (as outlined above) was then memorialized in several emails in the September to October 2025 timeframe, when Plaintiff was trying to escalate the matter for Defendant Strauss to intervene (as HR was not engaging in any meaningful remedial action).

48.    In each of the aforementioned emails to HR and Defendant Strauss, Plaintiff explicitly mentioned that each time she complained of "discrimination" in the past, she would experience retaliation or backlash, and her ongoing concerns of retaliation were not remedied.

49.    Plaintiff was then abruptly terminated by HR Generalist, Amirah Perry (hereinafter "Perry"), by letter stating: "effective November 21, 2025," Plaintiff was being terminated due to purported "poor performance."

50.    In conjunction with her termination, Plaintiff was provided with an unsolicited severance agreement for a very small amount of money if she agreed to waive any claims she may have against Defendants (including those for discrimination and retaliation), which she did not sign.[2]

---

[2] It is well established that when no policy mandates the offering of severance pay to waive legal claims, it is admissible evidence by a plaintiff to prove discrimination, retaliation and pretext. No policy of Defendants requires employees allegedly terminated for poor performance to be offered a lump-sum of money in severance pay. *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed. R. Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408

51.     Thus, there is no doubt that Plaintiff was subjected to (a) race discrimination; (b) discrimination on account of her actual or perceived health disclosures; (c) a hostile work environment; (d) non-accommodation of her aforesaid health conditions (set forth *supra*); and (e) retaliation – both for her expressed concerns/complaints of race discrimination and Defendants' failure to properly accommodate her health conditions.

52.     Plaintiff also believes and therefore avers that her race and disabilities were motivating and/or determinative factors in the termination of her employment by Defendants.

### COUNT I
### Violations of 42 U.S.C. Section 1981
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
### -Against All Defendants-

53.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54.     During Plaintiff's employment with Defendants, she was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of her race.

55.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendants' management, but her concerns were ignored.

56.     Plaintiff was then terminated for completely pretextual reasons on or about November 21, 2025.

57.     Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of her race and her objections to/complaints of race discrimination.

---

because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

58. Plaintiff also believes and therefore avers that but for her race, she would not have been terminated from her employment by Defendants.

59. These actions as aforesaid constitute violations of Section 1981.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Defendant Thrive Only-**

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. During Plaintiff's employment with Defendant Thrive, she was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of her race.

62. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant Thrive's management, but her concerns were ignored.

63. Plaintiff was then terminated for completely pretextual reasons on or about November 21, 2025.

64. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of her race and her objections to/complaints of race discrimination.

65. Plaintiff also believes and therefore avers that her race was a motivating and/or determinative factor in the termination of her employment by Defendant Thrive.

66. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

11

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**
**-Against Defendant Thrive Only-**

67.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.    Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

69.    Plaintiff kept Defendant Thrive's management informed of her serious medical conditions and need for medical treatment and other accommodations.

70.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant Thrive; however, Plaintiff did require reasonable medical accommodations at times.

71.    Plaintiff requested reasonable accommodations from Defendant Thrive, including but not limited to, intermittent and/or block time off to care for and treat her aforesaid disabilities, as well as the ability to have management refrain from hostilely yelling and berating her, which exacerbated her health conditions.

72.    Plaintiff was subjected to discrimination and a hostile work environment through disparate, discriminatory, demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

73.    Defendant Thrive failed to properly accommodate Plaintiff by refusing to ensure that Defendant Bhatia stopped yelling at her and making derogatory comments (which exacerbated her serious health conditions).

12

74. Instead of investigating Plaintiff's aforesaid complaints of unfair treatment and a failure to properly accommodate her health conditions, Defendant Thrive's management ignored them and left her legitimate concerns unresolved.

75. Plaintiff was then terminated from her employment with Defendant Thrive, on or about November 21, 2025, in close proximity to her expressed complaints of unfair treatment and Defendant Thrive's management's failure to properly accommodate her health conditions.

76. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; (4) her expressed concerns of unfair treatment as a result of her disabilities; and (5) Defendant Thrive's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

77. Plaintiff also believes and therefore avers that her disabilities were a motivating and/or determinative factor in the termination of her employment by Defendants.

78. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their

willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.        Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.        Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.        Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 6, 2026

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Shauntel Morgan | : | CIVIL ACTION |
| v. | : | |
| Thrive Therapy, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
       and Human Services denying plaintiff Social Security Benefits.                              (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
       exposure to asbestos.                                                                      (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
       commonly referred to as complex and that need special or intense management by
       the court.  (See reverse side of this form for a detailed explanation of special
       management cases.)                                                                         (  )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.               (x )

| | | |
|---|---|---|
| 7/6/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*  ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B.*  ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MORGAN, SHAUNTEL

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

THRIVE THERAPY, LLC, ET AL.

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Section 1981, Title VII, PHRA and PFPO.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____   DOCKET NUMBER _____

DATE  7/6/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____